*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1800**

State of Minnesota,
Respondent,

vs.

Kanishka Shereal Molina,
Appellant.

**Filed August 4, 2014
Affirmed
Smith, Judge**

Olmsted County District Court
File No. 55-CR-11-4442

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie M. Willett, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's presumptive guidelines sentence for her conviction of first-degree assault because the district court considered circumstances for and against a downward dispositional departure.

## FACTS

On December 21, 2010, approximately two weeks before her twentieth birthday, appellant Kanishka Shereal Molina gave birth to her fourth and fifth children, premature twins. The twins stayed in the hospital for about one month, then moved home with Molina, their father, and their older siblings. Molina was the children's primary caregiver and, to assist with the situation, she was offered in-home services by a nurse and a social worker; the record does not establish whether Molina ever utilized these services.

On May 1, 2011, Molina brought one of the twins to the hospital, seeking medical attention for his arm. During the medical examination that followed, hospital staff discovered an acute fracture in the infant's arm, as well as several healing fractures in his arms and legs. Hospital staff contacted police, who responded and went to Molina's home. There, officers observed small bruises on the other twin's face. A subsequent medical examination revealed acute fractures in the second infant's clavicle and jaw, and healing fractures in her ribs and leg.

On June 27, 2011, respondent State of Minnesota charged Molina with two counts of first-degree assault and two counts of third-degree assault.[1] On March 14, 2013, under the terms of a plea agreement, Molina entered an *Alford* plea[2] of guilty to an amended count of first-degree assault, with both twins as victims, and the other counts were dismissed. Molina moved for a downward dispositional departure. The state agreed that if community corrections found Molina amenable to probation and recommended a downward dispositional departure, it would support the departure; if these conditions were not met, it would seek a guidelines sentence. The district court accepted Molina's plea and ordered a presentence investigation (PSI).

The PSI report prepared by community corrections found that Molina is not amenable to probation and recommended a presumptive guidelines sentence of 86 months' imprisonment.[3] Molina sought a second opinion from a "dispositional advisor," who prepared a written recommendation on her behalf. At sentencing, the district court questioned a community corrections representative about the dispositional advisor's report. The representative testified that community corrections received the report and, after careful reconsideration, decided not to change the PSI report's recommendation.

---

[1] Subsequently, Molina voluntarily terminated her parental rights to all five children.

[2] An *Alford* plea permits a district court to accept a guilty plea even though the defendant maintains his or her innocence if the district court examines the factual basis of the guilty plea and concludes through a colloquy with the defendant that there is "evidence [that] would support a jury verdict of guilty, and that the plea is voluntarily, knowingly, and understandingly entered." *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977); *accord North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970).

[3] We note that although it did not recommend an upward departure, community corrections found two aggravating factors: the victims were particularly vulnerable and were treated with particular cruelty.

After hearing argument from both sides and receiving exhibits from the state, the district court determined that there were no "substantial or compelling reasons to depart from the sentencing guidelines" and sentenced Molina to the presumptive guidelines sentence of 86 months' imprisonment.

## DECISION

Molina argues that the district court abused its discretion by imposing the presumptive guidelines sentence of 86 months' imprisonment when there are substantial and compelling mitigating factors warranting a dispositional departure. In particular, Molina asserts that the district court failed to consider the requisite factors regarding her amenability to probation.

We review a district court's sentencing decision for an abuse of discretion and will not interfere "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985); *see also State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000). "[I]t would be a rare case which would warrant reversal" of a presumptive sentence, *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981), and appellate courts should modify presumptive sentences only under "compelling circumstances," *State v. Freyer*, 328 N.W.2d 140, 142 (Minn. 1982).

"The district court must order the presumptive sentence provided in the sentencing guidelines unless substantial and compelling circumstances warrant a departure." *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011). Generally, durational departures must be supported by *offense*-related factors, while dispositional departures can be supported

4

by *offender*-related factors. *See State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995) (stating that "the *offender*-related factor of particular unamenability to [probation] may be used to justify a dispositional departure" but that "*offense*-related aggravating factors may be used to support" both dispositional and durational departures); *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983) (stating that when considering "only a *dispositional* departure, the [district] court can focus more on the defendant as an individual and on whether the presumptive sentence would be best for [the defendant] and for society"). "[A] defendant's particular amenability to individualized treatment in a probationary setting will justify" a downward dispositional departure. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982).

Molina asserts that she "should be placed on probation" because the district court failed to address the *Trog* factors, and she "was an excellent candidate for probation." In *Trog*, the supreme court stated that "[n]umerous factors, including the defendant's age, [her] prior record, [her] remorse, [her] cooperation, [her] attitude while in court, and the support of friends and/or family, are relevant" to determining whether a dispositional departure is justified. *Id.* But we have explicitly held that when the district court elects *not* to depart, it need not discuss the *Trog* factors. *Pegel*, 795 N.W.2d at 254. Rather, when imposing a presumptive sentence, the district court must "deliberately consider[] circumstances for and against departure and exercise[] its discretion." *Id.*

Here, before imposing sentence, the district court heard information from a community corrections representative and argument from both attorneys. It then stated:

I am not going to find any substantial or compelling reasons to depart from the sentencing guidelines in this case.

I have several comments I want to make.

I'm not sure that this incident isn't likely to reoccur based upon everything that I have read, including your desire to have more children in the future. You pled guilty to this offense at the last opportunity and you take nominal responsibility for your behavior; in fact, blaming others for the injuries to the twins. This was a pattern of abuse over time, violence towards these infants who were particularly vulnerable. It is not one of the cases as cited by [defense counsel] where there is a moment of rage or a moment of poor judgment. This was abuse over time and during a period of time where you were offered voluntary services from public health and social services to help you with your situation with your twins. Mayo Clinic understood that you had your hands full and, in fact, wanted to provide you with those services. You did not access those services and did not access medical care for those twins as they needed it.

Because the record demonstrates that the district court carefully considered circumstances for and against departure and deliberately exercised its discretion when denying Molina's departure motion, the district court did not abuse its discretion by imposing the presumptive guidelines sentence.

**Affirmed.**